[Civ. No. 21243. Second Dist., Div. Two. July 10, 1956.]

CITY OF LONG BEACH, Appellant, v. CLYDE ALLEN et al., Defendants; AGNES H. TUTTLE, as Guardian, etc., Respondent.

Walhfred Jacobson, City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Appellant.

Kenneth Sperry for Respondents.

FOX, J.—Harold J. Irwin joined the Long Beach Police Department as a patrolman on March 25, 1942. He was assigned to duty as a motorcycle patrolman on November 1, 1944. He was killed on March 20, 1945, while in the performance of his official duties. He left two minor children—Joyce Ann and John Richard—who, as such, are entitled to a fluctuating pension "in an amount equal to one-half (½) of the salary attached to the rank or position" (§ 187(4) of the city charter) which their father held in the department at the time of his death.

Under the provisions of the initiative salary ordinance of 1926, the salary for patrolman was set up on a five step plan. This plan has been carried through subsequent salary ordinances for the position of patrolman and motorcycle patrolman. The salary ordinance in effect on the date of Irwin's death provided for an initial salary at the "a" rate for the first six months of employment and a salary at the "b" rate for the second six months. After one year the employee was entitled to receive pay at the "c" rate; after two years at the "d" rate; and after three years at the "e" rate. These step increases were automatic upon the employee's serving the required respective periods. At the date of Irwin's death he lacked five days of having completed three

years' service as a member of the police department and was being paid at the "d" rate for motorcycle patrolman, viz., $249 per month.

The trial court found that "at the time of his death said Harold J. Irwin was receiving the "d" rate of pay and lacked but five days of having completed three years of service as a motorcycle patrolman, which at that time would have entitled him to receive the highest or "e" rate of pay. That the pension of the cross-complainants Joyce Ann and John Richard Irwin should have been based upon the "e" rate of pay . . ." Judgment was accordingly entered for them based on the highest rate of pay for their father.

The city takes the position that the pension of the children should be based on the "d" salary rate which their father was actually receiving at the time of his death. The city's position must be sustained.

■ We must start with the basic premise that the children derive their pension rights through their father and by reason of his position as a member of the Long Beach Police Department. That position carried with it a "d" salary. The children became entitled to a pension immediately upon the death of their father. That pension was fixed by the charter as one-half of the salary attached to the position which Irwin held in the police department at the time of his death. The salary attached to the position that he held was the amount fixed by ordinance that was payable to him monthly for his services. That was the "d" salary for motorcycle patrolman. The children were therefore entitled to one-half of that amount as a pension. At the time of his death Irwin was not entitled to an "e" salary rate. Since the children derive their pension rights through their father they cannot be entitled to a pension based on a salary rating their father had never received and which he admittedly was not entitled to receive. In this connection it should be noted that as a member of the police department Irwin was required to pay a certain percentage of his monthly salary into the pension fund. (See *Allen* v. *City of Long Beach,* 45 Cal.2d 128, 131 [287 P.2d 765].) That percentage was, of course, figured on the amount he was entitled to receive monthly under the salary ordinance. Since the salary he was receiving at the time of his death was the proper basis for figuring his contributions to the pension fund and the pension for his children is measured by a percentage of his salary it is

inescapable that the same salary must be used in determining the payments both into and out of the fund.

The trial court's decision is sought to be justified upon the theory of substantial compliance. That theory, however, is not here applicable. For these children to be entitled to a pension based on an ''e'' salary their father must have been entitled to such salary when he died. But admittedly he was not, for he had not met the required condition, namely, three years' service. He could only be entitled to the higher salary upon meeting the express condition of the salary ordinance. If the theory of substantial compliance were applicable it would mean that Irwin was entitled to be paid at the higher salary scale at the time of his death, and that all other members of the police department would be entitled to the higher rate when they were within five (or perhaps six or eight or 10) days of finishing a stated period of service in a particular salary bracket. The absurdity of such a result demonstrates the inapplicability of the theory. There are numerous situations where the full period of a specified time must expire before rights may be asserted. A promissory note due three years after date may not be sued upon five days before it is due. Nor may a person vote who is 20 years, 11 months and 25 days old on election day. The language in the salary ordinance here is clear that a police officer is not entitled to the ''e'' salary until ''after a three-year period of employment.'' We cannot, by a process of judicial erosion, wipe out the clearly defined salary differential between two and three years' service with the department.

In support of their theory of substantial performance, respondents rely on *Division of Labor Law Enforcement* v. *Ryan Aeronautical Co.*, 106 Cal.App.2d Supp. 833 [236 P.2d 236, 30 A.L.R.2d 347]. That case, however, is not here applicable. In that case the court held that the contract agreement by which the employee was to have a two weeks' vacation with pay after one full year of service, which, however, was cut short by five days through no fault of either the employer or employee, was ambiguous and should be construed as a promise rather than a condition precedent. Also, to construe the provision as a condition would result in a forfeiture of the vacation rights that had thus accrued, for the employee had been earning such right throughout the entire period as a part of his compensation. (See *Jones* v. *California Emp. Stab. Com.*, 120 Cal.App.2d 770 [262 P.2d 91].) Here the provisions of the salary ordinance are clear

and no question of forfeiture is involved.. The children have been receiving a pension based on the ''d'' salary scale for a number of years.

It is argued that Irwin's salary should be treated as being at the highest or ''e'' level because the services he performed were identical with those performed by the motorcycle patrolmen who were in the latter salary bracket. It is conceded that the services rendered by the two groups were identical. But, so were the services rendered by those in the ''a,'' ''b'' and ''c'' salary brackets as well as those in the ''d'' and ''e'' schedules. The higher rates of pay are based upon years of service and more experience, and to encourage employees to remain in the department. Salary differences based upon these and other similar considerations are a matter of common practice. But the fact that the services rendered by the motorcycle patrolmen are the same is not the criterion fixed by the charter for determining a pension. It is instead *the salary attached to the position in which the services are performed.*

Respondents observe that ''the loss occasioned by the death of the . . . father and the need of the children are just as great whether his death occurs during the first year or two of his employment, as during the fourth year thereof.'' This may be true. The children may be financially independent but they are entitled to receive the pension. The charter does not provide for a pension based on need but provides for a fluctuating pension based upon the salary fixed for the position held by the employee at the time of his death.

 It is well settled that pension statutes must be liberally construed to effectuate their beneficent purposes. (*England* v. *City of Long Beach*, 27 Cal.2d 343, 346 [163 P.2d 865].) It is suggested that by the application of this principle the decision of the trial court may be sustained. We cannot agree for that principle cannot be used to lift an employee out of one salary rate and place him in a higher one when admittedly he has not met the condition therefor. That is the effect of the trial court's decision in this case.

The portions of the judgment relating to the respondents Irwin are modified by striking the following language from the first paragraph thereof: ''the highest or 'e' rate of salary'' and by inserting in place thereof the following: ''the ''d'' rate of salary.'' The second paragraph of said judgment purporting to award the respondents Irwin the sum

of $1,088.50 is stricken in its entirety. As so modified, the judgment relating to the respondents Irwin is affirmed. The city shall recover its costs on appeal.

Moore, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied August 3, 1956, and respondent's petition for a hearing by the Supreme Court was denied September 6, 1956.